**BLD-155**                                                                 **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-4195

———————

MICHAEL JOSEPH SCERBO,

                                  Appellant,

v.

CRAIG A. LOWE, Warden; SGT. PERRY
LANGBEIN; LT. CAMPOS; RON GRECO

———————————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 07-cv-00527)
District Judge:  Honorable Richard P. Conaboy

———————————————————

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
April 9, 2009

Before:  McKEE, FISHER and CHAGARES, Circuit Judges

(Filed: May 1, 2009)

———————

OPINION

———————

PER CURIAM

      Appellant Michael Scerbo, an inmate at the Pike County Correctional Facility

("PCCF") in Lords Valley, Pennsylvania, filed an in forma pauperis civil rights complaint

in United States District Court for the Middle District of Pennsylvania against four employees of PCCF: Warden Craig A. Lowe, Sergeant Perry Langbein, Lieutenant Campos, and Ron Gerico, Classification Coordinator. Scerbo complained that, upon entering PCCF in April 2005 for charges such as theft by unlawful taking, he was placed in maximum security custody without any hearing in violation of his constitutional rights. Unlike inmates in the general population, he is locked down 23 hours each day, and gets only one hour of exercise per day. Scerbo pursued his administrative remedies through PCCF's grievance system. Although he achieved release to the general population in November 2005, he was quickly returned to maximum security custody when he broke certain rules, and he was advised that he would remain there. He also alleged in the complaint that he had developed a blood clot in his right leg, which he attributed to a lack of exercise. Scerbo asked for money damages in an unspecified amount.

The District Court dismissed defendants Langbein and Campos pursuant to 28 U.S.C. § 1915(e)(2)(B), and ordered that the complaint be served on defendants Lowe and Gerico.[1] Scerbo was permitted to amend his complaint. Following a period of discovery, and the taking of Scerbo's deposition, the remaining defendants moved for summary judgment. Scerbo also moved for summary judgment

---

[1] The District Court held that Scerbo's claims against Langbein and Campos with respect to their handling of his grievances did not give rise to a constitutional violation. We agree and will not address further the claims against these defendants.

In their motion for summary judgment, the defendants asserted, and documented through exhibits and deposition testimony, that Scerbo had previously served a term of imprisonment at PCCF, during which time he had repeatedly violated prison rules.[2] Accordingly, upon his return to PCCF on April 27, 2005, the defendants placed him directly into maximum security custody. Scerbo did not appeal that classification until September 2005, and his first appeal was denied. His second appeal was granted on November 3, 2005 by defendant Warden Lowe, and Scerbo was moved to the general population and given another chance to enter a program he desired. However, he was advised that, if he became involved in any future incident or failed to follow prison rules, he would be returned to maximum security custody permanently. Scerbo went four days before he committed his next violation of the rules. After that, he was returned to maximum security custody as a security risk. Scerbo appealed his return to maximum security status on November 14, 2005. Warden Lowe denied the appeal on the ground that Scerbo had been warned of the consequences of failure to follow prison rules and regulations, including that he would be permanently classified as maximum security status.

The defendants also established through exhibits and deposition testimony that, between June 18, 2005 and May 13, 2007, Scerbo was issued ten separate misconduct

---

[2]Scerbo was serving a sentence at PCCF from 2001 until November 2003 for theft by unlawful taking and disposition, false imprisonment, and impersonating a public servant.

violations, to which he pleaded guilty to all but one of the violations. In addition, in total, Scerbo filed eight appeals concerning his classification status from September 2005 through March 2007. With respect to Scerbo's medical claim, the defendants asserted that, when he complained of pain in his leg, he was examined by a physician. When that physician suggested transportation to a hospital, the Pocono Medical Center, so that diagnostic tests could be performed, Scerbo was brought to the hospital. When the diagnosis was made of a clot in his leg, the physician prescribed the administration of Coumidin, a blood thinner, and that medication was provided in accordance with the physician's prescription.

Following the submission of a Report and Recommendation by the Magistrate Judge, recommending that the defendants' motion for summary judgment be granted, and the submission of Objections by Scerbo, the District Court, in an order entered on September 29, 2008, granted summary judgment in favor of the remaining defendants and against Scerbo. Scerbo's summary judgment motion was denied. The District Court adopted the Report and Recommendation as the Opinion of the Court. In that Report, the Magistrate Judge looked at two periods: the period of six months from April 2005 until November 2005, during which time Scerbo was held in maximum security custody without a hearing, and the eighteen-month period from November 2005 until May 2007 when Scerbo received numerous hearings.

The Magistrate Judge concluded that Scerbo did not dispute any of the material facts pertaining to his classification history.[3]  For the eighteen-month period beginning in November 2005, Scerbo's continued confinement in maximum security custody was due to his conduct and violations upon his re-incarceration at PCCF, and not due to his prior conduct during his first confinement at PCCF.  He received all the required hearings on his misconducts and thus was not deprived of due process.  Although he did not receive a hearing on his initial six-month confinement in maximum security custody, it was not an atypical or significant hardship under Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997).  Scerbo had no liberty interest in any particular custody classification at PCCF, see Meachum v. Fano, 427 U.S. 215 (1976), and his initial confinement in maximum security custody properly was based on the Warden's belief, based on past experience, that he was a security risk.  Even if a liberty interest was involved, Scerbo had numerous opportunities to contest his classification.  After his immediate placement in maximum security custody upon his re-incarceration at PCCF, he had readily available a process to challenge his classification, but chose not to do so until September 29, 2005.

With respect to the medical claim, the Magistrate Judge concluded that Scerbo had not rebutted the defendants' assertion that they had not acted with deliberate indifference to his needs.  Scerbo did not in fact dispute that he received adequate medical attention.

---

[3]Scerbo asserted that none of his misconducts were particularly serious, which may have been the case, but the issue for PCCF was not the seriousness of his infractions; it was the sheer number of them.

He did assert that the one-hour per day limitation on his ability to exercise had caused the blood clot in the first place, but he had no evidence to support his opinion, and thus he failed to show the existence of a genuine issue of material fact. See Fed. R. Civ. Pro. 56(c), (e). He admitted at his deposition that, even after being treated by non-prison doctors for his blood clot, he was not prescribed an exercise regimen or any specific physical activities. Thus, there was simply no evidence of a causal link between the restrictions of maximum security confinement and the development of his blood clot.

Scerbo appeals. Our Clerk granted him leave to appeal in forma pauperis and advised him that his appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, but he has not done so.

We will dismiss the appeal as frivolous. We have jurisdiction under 28 U.S.C. § 1291. An appellant may prosecute his appeal without prepayment of the fees, 28 U.S.C. § 1915(a)(1), but the in forma pauperis statute provides that the Court shall dismiss the appeal at any time if the Court determines that it is frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). An appeal is frivolous when it lacks an arguable basis either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Our review of the District Court's grant of summary judgment is plenary and we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We conclude that there is no arguable basis in fact or law for disagreeing with the District Court's summary judgment

determination in Scerbo's case. Neitzke, 490 U.S. at 325; Celotex Corp., 477 U.S. at 322-23.

The Magistrate Judge, and the District Court in addressing Scerbo's Objections, properly analyzed whether the conduct complained of deprived Scerbo of rights, privileges or immunities secured by the Constitution or laws of the United States, specifically whether he was denied Fourteenth Amendment "due process rights [which] are triggered by deprivation of a legally cognizable liberty interest." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003). In Mitchell, we explained that "[f]or a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

What is an "atypical and significant hardship" is determined by "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin, 112 F.3d at 706. In the case of disciplinary or administrative custody, if the inmate had no protected liberty interest in remaining free of such custody, then the inmate was owed no process, in the form of hearings or otherwise, before or during his placement. Mitchell, 318 F.3d at 531. However, if it is determined that an interest is protected by the Fourteenth Amendment, "the question then becomes what process is due to protect it." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Morrissey v. Brewer, 408 U.S. 564, 575 (1972)). In deciding whether a protected liberty interest exists, a court must consider the duration of the complained-of

confinement and the conditions of that confinement in relation to other prison conditions. Mitchell, 318 F.3d at 532 (citing Shoats, 213 F.3d at 144).

We agree with the District Court and Magistrate Judge that Scerbo's initial six-month confinement did not have the lengthy durational element necessary to bring it within the protections of the Fourteenth Amendment, especially given the rationale for the placement, see Griffin, 112 F.3d at 708 (exposure to conditions of administrative custody for periods as long as 15 months falls within the expected parameters of sentence imposed). We agree with the District Court that confinement of a proven problematic inmate to maximum security status upon re-incarceration, at least for an initial period of six-months, is not an atypical or significant hardship that gives rise to due process protections, Sandin, 515 U.S. at 484. The District Court noted that Scerbo was cited for misconduct at least twice during this initial period of confinement. The conditions of Scerbo's confinement, including limited exercise time, also do not support finding a liberty interest, Griffin, 112 F.3d at 706-08. We also doubt whether Scerbo's subsequent eighteen-month period of confinement in maximum security custody could be considered an atypical and significant hardship, given the numerous misconduct citations issued to him during this time period. However, even if Scerbo's continued confinement in maximum security did give rise to due process protections, see Sandin, 515 U.S. at 484, the defendants were still entitled to summary judgment on this claim, because the due process provided was sufficient. Scerbo's status was reviewed on numerous occasions

during this time period, and he had an ongoing opportunity to present his views. He also received the process due him in connection with his disciplinary hearings.

With respect to the medical claim, we agree that the defendants were not deliberately indifferent to Scerbo's serious medical needs, <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976), and that there was an insufficient evidentiary basis for Scerbo's assertion that the limited exercise he received in maximum security caused the development of his blood clot. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (summary judgment proper where there is an insufficient evidentiary basis on which a reasonable jury could find in non-movant's favor). His opinion alone is insufficient to warrant a trial on causation. <u>See</u> Fed. R. Civ. Pro. 56(e).

For the foregoing reasons, we will dismiss the appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).